# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 5, 2000 Session

## SHANNON SMITH, ET AL. v. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court for Shelby County
### No. P-14673    Bobby H. Capers, Special Judge

---

### No. W1999-01708-CCA-R3-PC  - Filed May 15, 2001

---

Pursuant to a plea agreement, the Petitioners in the instant case each pled guilty to one count of murder in the perpetration of a robbery under Tennessee Code Annotated section 39-13-202, one count of especially aggravated robbery under Tennessee Code Annotated section 39-13-403, and one count of aggravated assault under Tennessee Code Annotated section 39-13-102.  The Petitioners were sentenced to concurrent sentences of life, twenty-five years, and six years, respectively.  On April 20, 1995, the Petitioners filed a petition for post-conviction relief.  Special Judge Bobby Capers was appointed to hear the post-conviction petition.  The trial court heard the Petitioners' petition between August 9, 1999 and August 19, 1999, and granted post-conviction relief to Petitioners Smith and Versie.  On December 3, 1999, the State filed a notice of appeal, challenging the post-conviction court's findings that neither of the Petitioners received effective assistance of counsel.  After a thorough review of the record, we conclude that the trial court was correct in granting post-conviction relief to the Petitioners.  The judgment of the post-conviction court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and John W. Campbell, Assistant District Attorney General, for the appellant, State of Tennessee.

Danese Banks, Memphis, Tennessee; Elaine R. Jones, Theodore Shaw, George H. Kendall, and Miriam Gohara, New York, New York, for the appellees, Shannon Smith and Keith Versie.

**OPINION**

Pursuant to a plea agreement, the Petitioners in the instant case each pled guilty to one count of murder in the perpetration of a robbery under Tennessee Code Annotated section 39-13-202, one count of especially aggravated robbery under Tennessee Code Annotated section 39-13-403, and one count of aggravated assault under Tennessee Code Annotated section 39-13-102. The Petitioners were sentenced to concurrent sentences of life, twenty-five years, and six years, respectively.[1] On April 20, 1995, the Petitioners filed a petition for post-conviction relief. Special Judge Bobby Capers was appointed to hear the post-conviction petition. The trial court heard the Petitioners' petition between August 9, 1999 and August 19, 1999, and ultimately granted post-conviction relief to Petitioners Smith and Versie. On December 3, 1999, the State filed a notice of appeal, challenging the post-conviction court's findings that neither of the Petitioners received effective assistance of counsel.

**FACTS**

At approximately 9:12 p.m. on June 24, 1991, the victims in the instant case, Terry and Elizabeth Wilbanks, were in Forrest Park in Memphis, Tennessee, when they were approached by three young black men. The three men attempted to rob the victims, but as the victims turned to leave the area without succumbing to the demands of the three men, Mr. Wilbanks was shot in the chest and Mrs. Wilbanks was shot in the right hip. Mr. Wilbanks died as a result of the gunshot wound he received.

Petitioners contend that a few hours earlier on the same day, four men were leaving Marked Tree, Arkansas, in a vehicle being driven by Mr. Eddie Mitchell. Mr. Mitchell's wife was a patient at Baptist Memorial Hospital in Memphis, Tennessee. This was the primary reason for Mr. Mitchell's nearly forty mile trip to Memphis, Tennessee, on this day. Mr. Mitchell was joined by Petitioners Smith and Versie, and Michael Wofford, who had asked to ride along so that they could do some shopping in Memphis with money they had earned from their summer jobs. The four men arrived in Memphis around 6:30 p.m. that evening, stopping first at the Mall of Memphis. After leaving the Mall of Memphis, the four then went to Southland Mall, arriving at approximately 8:30 p.m. Mr. Mitchell parked his car outside of Goldsmiths Department Store, and the four went into the mall where several purchases were made. The four men left the mall as it was closing for the night.

After leaving Southland Mall, the four men headed for Baptist Memorial Hospital so that Mr. Mitchell could visit his wife. The route that Mr. Mitchell drove on the way to the hospital was down Shelby Drive, turning north on Elvis Presley Boulevard, which ultimately changed into Bellevue,

---

[1] Petitioners Smith and Versie were joined in their original petition for post-conviction relief by Michael L. Wofford. Petitioner Wofford was denied post-conviction relief. Wofford filed notice of appeal after being denied post-conviction relief, but subsequently withdrew his notice of appeal. Matters pertaining to Wofford will not be discussed herein.

and then turning onto Union Avenue, where he pulled his car into a McDonald's restaurant parking lot. The record reflects that the Petitioners and Wofford had planned to eat at a McDonald's restaurant while Mr. Mitchell visited his wife. After locking his car, Mr. Mitchell headed across the street towards the hospital while the Petitioners and Wofford headed towards McDonald's. "The precise time the four [men] reached the restaurant was not clearly established, it is only clear that the four [men] reached the restaurant sometime between leaving the mall at 8:55 p.m. and their apprehension by police at McDonald's at approximately 9:25 p.m."

In the Petitioners' petition for post-conviction relief, the Petitioners claimed that their guilty pleas were not knowingly, intelligently, nor voluntarily entered. Specifically, the Petitioners claimed (1) that their due process rights were violated when the prosecution failed to furnish the Petitioners with requested exculpatory information, and (2) that they were deprived of effective assistance of counsel when counsel failed to undertake any meaningful factual investigation prior to their decision to enter guilty pleas. The post-conviction court found no merit in the first contention, but granted post-conviction relief after considering the ineffective assistance of counsel claim. This appeal by the State followed.

## ANALYSIS

The State appeals the post-conviction court's grant of post-conviction relief to Petitioner Smith and Petitioner Versie. After a thorough review of the record, we disagree with the State.

A. Standard of Review

The trial judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court's findings of fact are afforded the weight of a jury verdict, and this court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial judge. Henley, 960 S.W.2d at 578-79; Massey v. State, 929 S.W.2d 399, 403 (Tenn. Crim. App. 1996). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this court. Burns, 6 S.W.3d at 461. In this case, the burden of establishing that the evidence preponderates otherwise is on the State. Henley, 960 S.W.2d at 579; Black, 794 S.W.2d at 755.

This court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

In Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the Supreme Court applied the two-part Strickland standard to ineffective assistance of counsel claims arising out of a guilty plea. The court in Hill modified the prejudice requirement by requiring a defendant to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. 474 U.S. at 59, 106 S. Ct. at 370; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). Thus, in the instant case, the Petitioners bear the burden of showing (1) that their attorneys performance was deficient, and (2) that, but for counsels' errors, they would not have pled guilty and would have insisted on going to trial.

B. Smith

We begin our analysis with Petitioner Smith by examining the post-conviction court's findings of fact as placed against the backdrop of the record. The post-conviction court made a number of findings to arrive at the conclusion that Petitioner Smith's counsel was deficient in representing Petitioner Smith. The court first pointed out that the joint investigation by counsel and counsel's investigator was "less than adequate," setting forth that little or no effort was made to investigate facts. The court further noted that counsel's investigation "barely filled one page of notes." The court concluded that the investigation was unreasonable, especially in light of the fact that the Petitioner was charged with murder.

The court continued in its findings, pointing out that Petitioner Smith consistently held firmly to his claims of innocence. In fact, the court found that even when counsel was given evidence (i.e. receipts) that posed serious problems to the State in establishing the guilt of Petitioner Smith, counsel ignored such claims and made "little investigation" into such evidence, which had the ability to help establish the Petitioner's innocence at trial.

The court also addressed counsel's "fail[ure] to interview and identify critical State witnesses in furtherance of Petitioner Smith's defense." The post-conviction court noted in its findings of fact that counsel failed to interview six critical witnesses, and noted that the Petitioner's counsel testified at the post-conviction hearing that he did not plan to call any witnesses at trial. Further, the post-conviction court found that counsel failed to do any follow-up investigation on a seventh critical witness after counsel's investigator uncovered facts that could have helped establish the Petitioner's innocence if the Petitioner went to trial. The post-conviction court concluded by stating that "[counsel's] investigation of this critical witness was deficient."

The post-conviction court finally concluded its analysis in Petitioner Smith's case by addressing the amount of time invested by counsel in the Petitioner's case. As the post-conviction court points out, and the record reflects, counsel spent a total of 10.25 hours on Petitioner Smith's case - three of which were spent by counsel on the day the guilty plea was entered by the Petitioner. While not set forth in so many words, it is clear that the post-conviction court found this amount of time to be wholly inadequate in light of the fact that the Petitioner was "facing a first-degree murder charge."

Based on the foregoing factors, the post-conviction court found that "there [was] no evidence that [counsel] did any reasonable investigation, interviewed critical witnesses, nor prepared for trial," and concluded that counsel's performance "[fell] below the range of competence demanded of attorneys in criminal cases." Our review of the record supports the post-conviction court's findings. However, before post-conviction relief may be granted, the Petitioner must also "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

In addressing this second prong, the post-conviction court pointed out that Petitioner Smith maintained his innocence and requested a trial up until minutes before he pled guilty, even in the face of damning testimony by co-defendant Wofford at the guilty-plea hearing that the Petitioner was guilty. Further, the post-conviction court noted that it was only after a short break occurred in the guilty-plea proceedings and counsel talked to the Petitioner that the Petitioner finally gave in and pled guilty. Based upon these findings, the post-conviction court found that Petitioner Smith met the burden of establishing beyond a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Our review of the record does not show otherwise, and this court will not disturb the post-conviction court's grant of post-conviction relief to Petitioner Smith.

C. Versie

We next turn our attention to Petitioner Versie in this analysis. The court made a number of findings in arriving at the conclusion that Petitioner Versie's counsel was deficient in representing Petitioner Versie. First, the court pointed out that Petitioner Versie's counsel's investigation into facts "which were critical to the Petitioner's defense [fell] below the range of competency demanded of attorneys in criminal cases." The court focused on the fact that counsel knew and admitted that the timing of events was a "significant problem in the State's case;" that counsel had access to information that the crime occurred at 9:12 p.m.; and that counsel had store receipts showing that the Petitioner was at the Southland Mall at 8:55 p.m., yet counsel still failed to properly and adequately investigate the time that it would have taken the Petitioner to travel from the shop at Southland Mall to the scene of the crime. The only timing of events was conducted by counsel's investigator, who testified that he took the fastest route from the mall to the scene of the crime, and not the route that Mr. Mitchell actually drove on the day of the crime.

The court further made light of counsel's investigation of the timing of events by pointing out two critical flaws in the half-hearted investigation. First, the court noted that the timing of events did not include the time that it would have taken the four men to walk from the shops in the mall to their car in the parking lot, and second, the investigation did not include the time that it would have taken the Petitioner and two co-defendants to walk from the McDonald's restaurant to the scene of the crime. Instead, as the court points out and the record adequately supports, "[counsel] decided not to investigate these matters."

As with Petitioner Smith, the court also found that counsel failed to interview critical witnesses that he was aware of, and because of counsel's failure to interview such witnesses, he failed to uncover valuable information that could have aided the Petitioner in establishing his innocence if the matter had proceeded to trial. The court further found that Petitioner Versie's counsel had failed to subpoena any witnesses for trial, even though counsel maintained that he was ready for trial.

As the court points out and the record reflects, counsel testified that his decision making process was based primarily on the confession of co-defendant Wofford. While the court recognized "the power [of] a confession implicating one's client" and how such may influence decisions on how to represent that client, the court found that "reasonable investigation into the validity of co-defendant Wofford's confession was not done by counsel," especially in light of the fact the Petitioner maintained his innocence and desire to go to trial. The court concluded by finding that had counsel made a reasonable investigation, counsel "would have uncovered that [co-defendant] Wofford's confession contained statements that appeared to be inconsistent with the statements of Mrs. Wilbanks."

Based on the foregoing factors, the post-conviction court found that Petitioner Versie met his burden of proving that counsel's representation was deficient. Our review of the record supports the post-conviction court's findings. However, as set forth in the analysis we conducted for Petitioner Smith, before post-conviction relief may be granted, the Petitioner must also "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

Under the second prong in determining ineffective assistance of counsel, the post-conviction court's analysis was identical to that of Petitioner Smith's. In addressing this second prong, the post-conviction court pointed out that Petitioner maintained his innocence and requested a trial up until minutes before he pled guilty, even in the face of damning testimony by co-defendant Wofford who testified at the guilty-plea hearing that the Petitioner was guilty. Further, the post-conviction court noted that it was only after a short break occurred in the guilty-plea proceedings and counsel talked to the Petitioner that the Petitioner finally gave in and pled guilty. Based upon these findings, the post-conviction court found that Petitioner Versie met the burden of establishing beyond a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Our review of the record does not show otherwise, and this court will not disturb the post-conviction court's grant of post-conviction relief to Petitioner Versie.

## CONCLUSION

The post-conviction court's grant of post-conviction relief to Petitioners Smith and Versie is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE